SNELL & WILMER LLP
Amy F. Sorenson (8497)
Amber M. Mettler (11460)
Gateway Tower West
15 West South Temple Street, Suite 1200
Salt Lake City, Utah 84101-1547
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: asorenson@swlaw.com
Email: amettler@swlaw.com

CRAVATH, SWAINE & MOORE LLP
David R. Marriott (7572)
David Greenwald (*pro hac vice* pending)
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
Email: dmarriott@cravath.com
Email: dgreenwald@cravath.com

*Attorneys for Plaintiff Alcon Laboratories, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| ALCON LABORATORIES, INC.,<br><br>*Plaintiff,*<br><br>*v.*<br><br>SEAN D. REYES, in his Official Capacity as Attorney General of the State of Utah,<br><br>*Defendant.* | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Civil No. 2:15-cv-00252-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff Alcon Laboratories, Inc. ("Plaintiff" or "Alcon"), by and through its undersigned attorneys, hereby alleges as follows:

## NATURE OF THE ACTION

1.      Alcon brings this action under 42 U.S.C. § 1983 to challenge, under the Commerce Clause of the United States Constitution, the enforcement by Defendant, the Attorney General of the State of Utah, of S.B. 169, an amendment to the Utah Contact Lens Consumer Protection Act, Utah Code § 58-16a-901 *et seq.* (the "Amendment").

2.      Unless it is invalidated and its enforcement enjoined, the Amendment will interfere with Alcon's ability to take certain actions affecting the price at which contact lenses are sold or advertised by contact lens retailers, and to differentiate between retailers who sell contact lenses based on whether they sell at a particular price, are authorized to prescribe contact lenses, or operate in a particular "channel of trade."

3.      The Amendment will also impede a variety of activities by Alcon that benefit consumers, eye care professionals ("ECPs"), and the market for vision care products. Among its most notable effects will be interference with Alcon taking any action to enforce its Unilateral Price Policy (the "UPP"), which was introduced with the launch of an innovative contact lens product and applies to select lines of premium Alcon contact lenses ("UPP Products").  The UPP generates significant procompetitive benefits including, but not limited to: (i) encouraging ECPs to invest in learning about products covered by the UPP and educating patients about the advantages of these products; (ii) enhancing access to UPP Products for consumers; (iii) minimizing free-riding by retailers who do not invest in educating their

customers about UPP Products; (iv) encouraging innovation in new contact lens technologies; and (v) reducing gray market sales.

4.      In addition to affecting the UPP, the Amendment will interfere with various commercially reasonable programs and policies Alcon adopted prior to the UPP that benefit consumers, ECPs, and the market for vision care products.  These programs include: "fit" rebates for patients whose prescriptions are filled by the prescribing ECP; rebates for patients who adopt contact lenses or choose to move to Alcon products from other brands; and launching new lines of contact lenses by offering them initially only to ECPs, or contact lens retailers associated with ECPs, who fit patients with lenses.  Further, the Amendment would prevent Alcon from taking measures to protect the integrity and reputation of its brands by discontinuing the supply of products to contact lens resellers who engage in gray market sales.

5.      In so doing, the Amendment violates the Commerce Clause of the United States Constitution by regulating purely extraterritorial conduct, impermissibly discriminating against out-of-state interests, and placing burdens on interstate commerce that are clearly excessive in relation to local benefits.

6.      For these reasons, and as explained below, Alcon seeks an injunction against enforcement of the Amendment, a declaration that the Amendment is unconstitutional and invalid, and any other appropriate relief.

## JURISDICTION AND VENUE

7.      This action arises under 42 U.S.C. § 1983 and the United States Constitution.  Consequently, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.      Pursuant to 28 U.S.C. §§ 2201-2202, this Court may issue a declaratory judgment and further necessary or proper relief.

9.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

10.      This Court has personal jurisdiction over Defendant.

## PARTIES

11.      Plaintiff Alcon Laboratories, Inc. is a Delaware corporation headquartered in Fort Worth, Texas, and is an indirect wholly-owned subsidiary of Novartis AG ("Novartis"). Alcon is a manufacturer and developer of contact lenses and contact lens care solutions, as well as ocular pharmaceutical and surgical products.  Alcon serves ECPs and patients in more than 180 countries around the world and employs approximately 1,800 research and development employees worldwide.  Alcon is dedicated to ensuring a heightened level of service and attention to its customers, encouraging innovation across all its product lines, and investing in developing cutting-edge vision care technologies and products.  Over the next five years, Alcon plans to invest approximately $5 billion to discover and develop new treatment solutions for vision conditions and eye diseases.

12.      Defendant Sean D. Reyes is the Attorney General of the State of Utah and is sued in his official capacity as Attorney General.  The Office of the Attorney General is

4

authorized by the Utah Code to "prosecute or defend all causes to which the state or any officer, board, or commission of the state in an official capacity is a party, and take charge, as attorney, of all civil legal matters in which the state is interested." Utah Code § 67-5-1. The Amendment provides that "[t]he attorney general may bring a civil action or seek an injunction and a civil penalty against any person who violates a provision of Section . . . 58-16a-905.1."

## BACKGROUND

### A.    The United States Contact Lens Industry.

13.    Over 37.8 million United States residents wear contact lenses. Annual sales of contact lenses amount to over $4 billion. In the United States, there are at least four major manufacturers of contact lenses: Alcon, headquartered in Fort Worth, Texas; Johnson & Johnson Vision Care, Inc. ("J&J"), headquartered in Jacksonville, Florida; CooperVision Inc. ("CooperVision"), headquartered in Pleasanton, California; and Bausch + Lomb, Inc. ("B+L"), headquartered in Bridgewater, New Jersey. Upon information and belief, none of these contact lens manufacturers has facilities in Utah.

14.    Soft contact lenses are differentiated products that can be subdivided into various categories depending on the duration for which they are intended to be used, the eye condition they are intended to correct, and the conditions in which they are used (*e.g.*, during the day only or overnight). In terms of duration of use or replacement frequency, the vast majority of soft contact lenses are daily use, bi-weekly use, or monthly use. Contact lenses can be worn to correct a number of eye conditions, such as near-sightedness, far-sightedness, astigmatism, and presbyopia. Some contact lenses enhance or change the color or appearance of the wearer's

eyes and are worn for cosmetic purposes.  Others combine cosmetic and vision correction

features.  In light of the many varieties of contact lenses and their uses, there are over 370 brands

of soft contact lenses available in the United States.  Alcon itself manufactures 16 different

contact lens products, four of which are sold under the UPP.

15.     Contact lenses are regulated by the Food and Drug Administration as

Class II or Class III medical devices and can be obtained only with a valid, unexpired

prescription from a licensed ECP authorized to prescribe contact lenses (ophthalmologists or

optometrists).  Because of significant health and safety risks associated with wearing contact

lenses, and the diverse types of contact lenses available, it is important that licensed ECPs, the

sole professionals authorized to prescribe contact lenses, do so with the benefit of accurate and

up-to-date information.  To maintain normal ocular health and ensure that contact lenses correct

vision optimally and are comfortable, patients who wear contact lenses should be examined on

an annual basis by an ECP.

16.     Federal law requires that a prescribing ECP give the patient a copy of his

or her prescription, which allows it to be filled or re-filled by a reseller other than the prescribing

ECP.  *See* 15 U.S.C. § 7601 *et seq.*  Once a contact lens wearer has received a prescription, it

may be filled by one of several types of resellers of contact lenses, including directly by the

prescribing ECP, by an eye care retailer (*e.g.*, LensCrafters), by mass merchandise retailers (*e.g.*,

Wal-Mart or Costco), by a specialist internet or mail order contact lens reseller (*e.g.*, 1-800

Contacts), by a pharmacy, or by another ECP that sells contact lenses.  Contact lenses can also be

obtained through "gray market" sales.  For contact lenses, gray market sales refer to sales of

contact lenses that are not authorized by the manufacturer, often by entities that are not licensed to sell contact lenses (*e.g.*, sales on internet auction sites, at flea markets, at convenience stores, and at beauty supply stores).  Gray market sales of contact lenses are associated with a heightened risk to consumer health and safety because they allow contact lenses to be obtained without a current valid, unexpired prescription and without the supervision of a licensed ECP.

17.    In recent years, sales of contact lenses by resellers other than ECPs have grown, including through the rise of internet sellers of contact lenses such as 1-800 Contacts and through mass merchandisers.  Internet contact lens resellers typically do not employ ECPs who deal directly with the public; nor is their staff typically qualified or situated to assess the vision correction needs of their contact lens customers, to prescribe lenses, or to monitor ocular health. Mass retailers often do employ ECPs who interact with customers, but a significant share of those retailers' sales of contact lenses involves dispensing contact lenses to customers who already have a prescription from another ECP and who are not seen again by the retailer's ECP when filling the prescription.

**B.    Alcon Programs to Increase Contact Lens Access and Awareness.**

18.    Educating patients about the benefits of contact lenses, and prescribing and fitting contact lenses, requires additional investments by ECPs.  ECPs must invest time and resources to learn about new products, although they typically receive the same examination fee for a given individual whether or not they educate themselves and their patients about the benefits of contact lenses or new, advanced, contact lens products.  ECPs may be reluctant to make these investments because once the patient is issued a prescription, that prescription may

be filled by a low-cost contact lens reseller whose business model does not include those investments and who "free-rides" on the professional services provided by ECPs.

19.     To overcome these challenges, to improve patient access to better information and new technologies, and to enhance access to better eye care, Alcon invests heavily in commercially reasonable programs that benefit consumers, ECPs, and the market for vision care products.  These programs have over the years included at least the following:

(a)     "fit" rebates, consisting of enhanced rebates offered by an ECP who fits a patient for contact lenses when the patient's prescription is filled by the prescribing ECP;

(b)     rebates offered by an ECP to a patient who adopts contact lenses or chooses to move to an Alcon product if the patient's prescription is filled by the prescribing ECP;

(c)     making free trial lenses available only to ECPs, or contact lens retailers who are associated with an ECP, who fit patients with contact lenses; and

(d)     launching new contact lens products gradually on a region-by-region basis and making them initially available only from ECPs or retailers who are associated with an ECP.

20.     Alcon operates these programs on a nationwide basis and tailors the programs and the amounts invested to meet the needs of ECPs and contact lens retailers.  These programs have generated significant goodwill for Alcon in the marketplace.  They originate from and are administered by Alcon personnel located in Fort Worth, Texas.

21.     Most of the benefits of these programs are extended only to ECPs and retailers associated with ECPs who prescribe contact lenses, and not to retailers such as internet resellers who only dispense or resupply contact lenses but do not prescribe them.

**C.     Alcon's Unilateral Price Policy.**

22.     In June 2013, Alcon launched the Dailies Total 1® line of premium contact lenses.  The Dailies Total 1 lenses are a breakthrough product.  They are the first and only "water gradient" contact lenses in the world and are more "breathable," have greater "lubricity," and are more comfortable for wearers.  Bringing the Dailies Total 1 lenses to market was the culmination of substantial research and development efforts over 10 years, involving more than one million person-hours of work by scientists and engineers.

23.     When introducing the Dailies Total 1 contact lenses, Alcon faced the challenge of educating ECPs about the product's features and of encouraging them to inform patients about their benefits.  To meet these challenges, Alcon announced that those lenses would be supplied under the UPP, which was introduced simultaneously.  Under the UPP, Alcon does not supply UPP Products to resellers who sell or advertise the lenses for sale below Alcon's minimum net retail price (the "MRP").  However, Alcon does not seek or enter any agreement with any reseller about the price at which any reseller sells or advertises products covered by the UPP.

24.     Alcon's UPP applies only to certain products (initially, only the Dailies Total 1 lenses, now four of Alcon's 16 contact lens products, all of which were introduced after Alcon launched its UPP).

25.     Alcon supplies UPP Products only to resellers who comply with the UPP. The policy itself is non-negotiable.  None of Alcon's agents is authorized to discuss with any reseller whether the reseller is willing to sell at the MRP.  Resellers remain free to charge or advertise UPP Products at any price.  However, any reseller who continues to offer prices for a UPP Product below the MRP after receiving a notice of non-compliance from Alcon will not be supplied with the product in question for a one-year period.

26.     Alcon administers the policy unilaterally.  Alcon does not seek any agreement from resellers to comply with the policy and Alcon independently determines whether or not a reseller is in compliance.  Alcon communicates the terms of the UPP to resellers through a statement of the policy, a list of frequently asked questions, and a video describing the policy. The UPP does not apply to Alcon's contact lens product lines that were already on the market at the time of the UPP's introduction.  Alcon supplies contact lens resellers with those contact lens products without regard to the retail price at which they are sold or advertised.  Those pre-existing product lines account for the large majority of Alcon's contact lens revenue.

27.     The UPP secures important benefits for contact lens consumers, ECPs, and the marketplace for vision care products, and promotes innovation in the vision care industry. The UPP encourages ECPs—who are the main point of contact with consumers or end-users and who alone are authorized to prescribe contact lenses—to invest time both educating themselves about the features and benefits of UPP Products and explaining them to their patients.  Because ECPs are typically their patients' principal source of information about their vision care options, patients benefit by learning about and gaining access to UPP Products.

10

28.     Not all contact lens resellers are willing to invest in educating their patients about the benefits of new products.  Some resellers "free-ride" on the efforts of others. This free-rider problem is a significant barrier to the introduction of new contact lens products. The UPP fosters the ability and willingness of ECPs to provide services by reducing the risk that other resellers, who do not invest in educating their customers about UPP Products and compete only on price, will free-ride on the investments of ECPs who do.

29.     Alcon invested substantial time and resources—over 10 years of effort and an estimated one million person-hours by its scientists, engineers and others—to develop the Dailies Total 1 lenses and bring them to market.  The UPP rewards innovation by ensuring that Alcon will receive a return on its substantial R&D investments into the leading edge technologies featured in the Dailies Total 1 lenses and subsequent UPP Products.  Recouping the rewards on these investments allows Alcon to reinvest in new technologies that will supply the basis for the next generation of premium products to the benefit of both consumers and resellers.

30.     The UPP also reduces the risk of gray market sales because it reduces the number of resellers from which gray market sellers can obtain supplies.

31.     The market reaction to Alcon's introduction of the UPP has been favorable.  The UPP has stimulated demand for UPP Products, prompting Alcon to expand the program to cover other new innovative products launched since the UPP was introduced.  In January 2014, Alcon launched its Dailies AquaComfortPlus® Toric:  the first ever toric contact lenses designed for wearers with astigmatism to employ advanced polyvinyl alcohol lens material, which also incorporate blink-activated moisturizing technology.  At the same time,

11

Alcon launched its Dailies AquaComfortPlus® Multifocal:  the first contact lenses to employ multifocal lens design to accommodate the natural dilation of the pupil and offer uninterrupted binocular vision on advanced polyvinyl alcohol lens material, which also incorporate blink-activated moisturizing technology.  In April 2014, Alcon introduced Air Optix® Colors:  the first and only cosmetic contact lens made on a silicone hydrogel platform, which provides greater breathability than lenses made of less advanced materials.

32.     Separately, and months after Alcon first introduced its UPP, certain of Alcon's competitors announced their own unilateral pricing policies.  On information and belief, J&J, B+L, and CooperVision currently operate UPPs covering one or more of their products.

**D.     Alcon's Contact Lens Distribution Channel and the Administration of the UPP.**

33.     Alcon distributes its contact lenses nationwide through various distribution channels.  All Alcon contact lenses distributed in the United States are shipped from a facility in Johns Creek, Georgia.  Alcon's Johns Creek facility houses the factory where all domestically-manufactured Alcon contact lenses are produced, and it serves as the transshipment point for contact lenses manufactured outside the United States and imported for domestic sale.

34.     From Johns Creek, Alcon distributes contact lenses to resellers through a variety of channels.  Retailers and ECPs can obtain Alcon contact lenses through Alcon's network of eight authorized distributors located throughout the country.  Contact lenses supplied through authorized distributors are shipped from Johns Creek to the authorized distributors' 16 warehouses, from which they are in turn shipped to resellers and ECPs nationwide.  None of Alcon's authorized distributors' facilities is located in Utah.

12

35.     Alcon also ships contact lenses directly from Johns Creek to all types of resellers, including online resellers, national and regional eye care retailers (*e.g.*, LensCrafters), mass merchandise retailers and warehouse clubs (*e.g.*, Wal-Mart, Target, Costco), pharmacies, and individual ECPs.

36.     1-800 Contacts is the largest internet reseller of contact lenses and the largest reseller of contact lenses in the United States.  1-800 Contacts is located in Draper, Utah.  1-800 Contacts is an authorized supplier of contact lenses to consumers, and through its Premium Vision division distributes contact lenses for certain national chains of optical retailers owned by Luxottica Group S.p.A. such as Pearle Vision, Sears, LensCrafters, and Target Optical.

37.     Alcon's UPP is administered by Alcon personnel located at Alcon's headquarters in Fort Worth, Texas.  All day-to-day activity by Alcon personnel to administer the UPP occurs in Fort Worth.  All decision-making by Alcon concerning the UPP, including whether to amend the policy to add or remove products and whether to enforce it occurs in Fort Worth.

**E.     The Amendment.**

38.     S.B. 169, the Amendment to Utah's Contact Lens Consumer Protection Act, Utah Code § 58-16a-901 *et seq.*, was passed by the State Senate on March 2, 2015, and the House on March 10, 2015.  The Bill was signed by Utah Governor Gary Herbert on March 27, 2015, and will become effective on May 12, 2015.

39.     The Amendment adds the following provision as Section 58-16a-905.1 of

the Utah Contact Lens Consumer Protection Act:

> "A contact lens manufacturer or a contact lens distributor may not:
>
> (1) take any action, by agreement, unilaterally, or otherwise, that has the effect of fixing or otherwise controlling the price that a contact lens retailer charges or advertises for contact lenses; or
>
> (2) discriminate against a contact lens retailer based on whether the contact lens retailer:
>
>> (a) sells or advertises contact lenses for a particular price;
>>
>> (b) operates in a particular channel of trade;
>>
>> (c) is a person authorized by law to prescribe contact lenses; or
>>
>> (d) is associated with a person authorized by law to prescribe contact lenses."

40.     The Amendment is enforceable by the Utah Attorney General, who "may

bring a civil action or seek an injunction and a civil penalty against any person who violates a

provision of Section . . . 58-16a-905.1."

41.     Several provisions of the Amendment, if not enjoined, would apply to

Alcon.  First, as a "contact lens manufacturer," Alcon "may not . . . take any

action . . . unilaterally, or otherwise, that has the effect of fixing or otherwise controlling the

price that a contact lens retailer charges or advertises for contact lenses."  Amendment § 58-16a-

901.1(1).  Second, as "a contact lens manufacturer" Alcon "may not . . . discriminate against a

contact lens retailer based on whether the contact lens retailer" "sells or advertises contact lenses

for a particular price"; "operates in a particular channel of trade"; "is a person authorized by law

14

to prescribe contact lenses"; or "is associated with a person authorized by law to prescribe contact lenses." *Id*. § 58-16a-901.1(2).

      42.    The Amendment would interfere with at least the following activities because they may affect the price of contact lenses charged or advertised by a contact lens retailer:  operating the UPP, operating a minimum advertised price policy, operating a maximum resale price policy, and operating a maximum advertised price policy.

      43.    Further, the Amendment would interfere with at least the following activities because they may "discriminate" between contact lens retailers:

      (a)    offering a "fit" rebate;

      (b)    offering rebates to consumers who adopt contact lenses or choose to use Alcon lenses and fill their new prescriptions through the prescribing ECP;

      (c)    offering free trial lenses only to certain categories of contact lens retailers, such as ECPs or retailers associated with an ECP;

      (d)    launching new contact lens products on a geographically limited basis and making them initially available only through ECPs or contact lens retailers associated with an ECP;

      (e)    acting to prevent gray market sales of contact lens products by discontinuing supplying retailers who engage in gray market sales activities; and

      (f)    operating any program or practice that benefits any category of out-of-state contact lens retailer on better terms than those extended to contact lens retailers within Utah.

44.     The Amendment interferes with Alcon's ability to engage in certain conduct affecting the price for contact lenses charged or advertised by contact lens retailers irrespective of whether the price affected is offered within Utah or out-of-state.  Further, the Amendment regulates conduct by Alcon without regard to whether it takes place within or outside Utah, and it commands Alcon to offer the same benefits to all categories of Utah contact lens retailers that Alcon offers to any other retailer located anywhere outside of Utah.

**F.      The Amendment Will Cause Irreparable Injury.**

45.     When the Amendment takes effect on May 12, 2015, and unless its enforcement is enjoined, Alcon will either face a penalty for, or be required to modify, its conduct occurring entirely outside of Utah.  Neither outcome is constitutionally permissible.

46.     The Amendment, if not enjoined, will result in at least the following irreparable injuries to Alcon:  if Alcon complies with the Amendment, it will be required to modify the UPP and other programs that benefit consumers, ECPs, and the marketplace for vision care products.  Some ECPs will stop educating their patients about UPP Products and other Alcon products, resulting in a drop in Alcon's sales of Alcon products.  Alcon will not be able to obtain compensation for these financial injuries because the State of Utah is immune from damages suits for such claims and the Attorney General enjoys qualified immunity from damages suits as well.

47.     The Amendment will also cause irreparable injury to Alcon because it will deny Alcon rights that are guaranteed by the Commerce Clause by subjecting Alcon to

16

extraterritorial regulation by a state statute, discriminating between in-state and out-of-state actors, and burdening interstate commerce.

48.     Further, the Amendment will cause Alcon irreparable injury because it will hinder Alcon's efforts to operate programs that increase awareness of and access to contact lenses, interfere with its ability to diminish free-riding and gray market sales, impede its ability to innovate, and diminish its goodwill in the marketplace.

**CAUSE OF ACTION**
**42 U.S.C. § 1983, and**
**Art. I, Section 8 of the United States Constitution**

49.     Plaintiff repeats and realleges the allegations contained in each paragraph above with the same force and effect as if set forth fully herein.

50.     As set forth above, the Amendment violates 42 U.S.C. § 1983 by depriving Alcon of a right secured by the Constitution of the United States.

51.     The Commerce Clause of the United States Constitution provides that "[t]he Congress shall have the power to . . . regulate commerce . . . among the several states." U.S. Const. Art. I § 8 cl. 3.  The Commerce Clause prohibits states from enacting legislation that: (i) has the extraterritorial effect of controlling commerce occurring wholly outside the state; (ii) discriminates in favor of in-state interests over out-of-state interests; or (iii) imposes burdens on interstate commerce that are excessive in relation to local benefits.

52.     The Amendment violates the Commerce Clause in at least the following respects:

(a)     <u>Extraterritorial Effects:</u>  The Amendment has impermissible extraterritorial effects because, among other things:  (i) it will control conduct taking place wholly outside of Utah; (ii) it will interfere with the sale of UPP Products and other products outside of Utah, and otherwise disrupt the benefits of the UPP; and (iii) it will interfere with programs that benefit consumers, ECPs, and the marketplace for vision care products.

(b)     <u>Discriminatory Effects:</u>  The Amendment discriminates in favor of Utah contact lens retailers and against out-of-state contact lens retailers by, among other things: (i) preventing Alcon from extending any benefit to any contact lens retailer located anywhere outside of Utah unless Alcon extends the same benefit to Utah contact lens retailers; and (ii) interfering with the enforcement of the UPP against contact lens retailers in Utah who sell below the MRP.

(c)     <u>Burden on Out-of-State Commerce:</u>  The Amendment imposes burdens on out-of-state commerce that are clearly excessive in relation to any local benefits.

53.     As a result of these violations, Alcon is entitled to an injunction enjoining Defendant from enforcing the Amendment.

54.     Alcon is further entitled to a declaration that the Amendment is invalid and unconstitutional.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.      For an injunction enjoining Defendant from enforcing the Amendment;

2.      For a declaration that the Amendment is invalid and unconstitutional;

3.      For such costs and reasonable attorneys' fees to which it might be entitled by law; and

4.      For such other relief as this Court deems proper and just.

April 13, 2015

SNELL & WILMER LLP

by

/s/ Amy F. Sorenson

Amy F. Sorenson (8497)
A Member of the Firm

Gateway Tower West
15 West South Temple Street, Suite 1200
Salt Lake City, UT 84101-1547
(801) 257-1900

*Attorneys for Plaintiff Alcon Laboratories, Inc.*

Of Counsel:

David R. Marriott (7572)
David Greenwald (*pro hac vice* pending)
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
